**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **HENRY MOUNSON,** | ) |
| | ) |
|      **Plaintiff,** | ) |
| | ) |
| vs. | )    **CIVIL NO. 04-365-JPG** |
| | ) |
| **RAKESHA CHANDRA,** *et al.*, | ) |
| | ) |
|      **Defendants.** | ) |

**MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

Plaintiff, an inmate in the Tamms Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In this case, Plaintiff presents 11 different claims, as discussed below. The basic theme of this action is Plaintiff's habit of self-mutilation and suicide attempts. On the one hand, he claims that Defendants fail to take proper steps to ensure that he cannot harm himself; on the other hand, he complains about the inhumanity of the steps they do take to prevent self-harm.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in

fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are legally frivolous and thus subject to summary dismissal.

## CLAIM 1

On March 19, 2003, Defendants Gibson and Neighbors attempted to remove a sheet that Plaintiff had hung over his door. In the process, they kicked his hands, although he claims he presented no threat to them. Apparently Plaintiff had his hand sticking out through the hatch door; Gibson kicked the door, which then cut Plaintiff's hand. He alleges that Defendants Watts and Stewart observed this incident but failed to intervene.

Plaintiff was then removed from his cell by the tactical team and taken to the nurses' room. Plaintiff requested medical treatment for the cut on his right hand and for self-inflicted injuries to his left arm, as well as a visit from a mental health professional. He alleges that out of retaliation, Defendant Fornear did not provide him with access to a mental health professional. He also claims that Fornear subjected him to additional excessive force by causing him extreme pain while cleansing his wounds. While Fornear was dressing his wounds, he claims that Defendant Folsom twisted the cuff on his wrist, thus cutting off circulation, while Defendant Hilliard bent his injured right thumb backwards, causing him more pain. After that, Defendant Pratis touched his buttocks and scrotum, then inserted one or more fingers into his anus through his clothing.

*Excessive force*

Three claims of excessive force are suggested by these allegations: (1) against Gibson and Neighbors for kicking his hand, and against Watts and Stewart for failing to prevent that act; (2) against Fornear for causing him pain while cleansing his wounds; and (3) against Folsom and Hilliard for their actions.

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under Section 1983. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action. . . . [the] prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10; *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

Applying these standards to the allegations, the Court finds that the actions of Gibson and Neighbors do not constitute excessive force; it follows that Watts and Stewart had no duty to prevent those actions. Likewise, the fact that Plaintiff experienced some pain while Fornear cleaned his wounds does not state a claim for use of excessive force. However, the Court is unable to dismiss the excessive force claims against Folsom and Hilliard at this time.

*Unlawful Search*

Plaintiff then invokes the Fourth Amendment, arguing that Pratis's action constituted an unlawful search of his body. Although Pratis's behavior – essentially emulating a body cavity search through Plaintiff's clothes – was unpleasant and perhaps unprofessional, this incident does not rise to the level of an unreasonable body search. *See generally Bell v. Wolfish*, 441 U.S. 520,

559 (1979); *Forbes v. Trigg*, 976 F.2d 308, 312 (7th Cir. 1992), *cert. denied*, 507 U.S. 950 (1993); *Meriwether v. Faulkner*, 821 F.2d 408 (7th Cir. 1987), *cert. denied*, 484 U.S. 935 (1987). Accordingly, this claim is also dismissed from this action with prejudice.

*Medical Care*

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994). In keeping with this standard, the Seventh Circuit has found that "the need for a mental illness to be treated could certainly be considered a serious medical need." *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001); *Wellman v. Faulkner*, 715 F.2d 269 (7th Cir. 1983). However, "negligence alone, or simple malpractice, is insufficient to state a claim for relief," *Kelly v. McGinnis*, 899 F.2d 612, 616 (7th Cir. 1990), as is the provision of medical treatment other than that preferred by the inmate. *Estelle*, 429 U.S. at 107. *See also Jones v. Simek,* 193 F.3d 485, 489 (7th Cir. 1999); *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1996), *cert. denied,* 519 U.S. 897 (1996). Allegations of "refusal" to provide medical care, without more, will not establish deliberate indifference, nor will delay, even if serious injury results. *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987).

In this case, the Court finds that Fornear's refusal to call a mental health professional on this one particular occasion, without more, does not rise to the level of an Eighth Amendment violation. Accordingly, Plaintiff's claim against Fornear for denial of mental health treatment is dismissed from this claim with prejudice.

*Retaliation*

Plaintiff vaguely alleges that Fornear's denial of a visit from a mental health professional was "due to retaliation," and prison officials may not retaliate against inmates for filing grievances

or otherwise complaining about their conditions of confinement. *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988).  Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer."  *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).

In this claim, Plaintiff merely throws in the term "retaliation" without even the "bare minimum facts" to support this claim; he makes no allegation that he had engaged in any protected action that was the motivating factor behind Fornear's actions.  Therefore, this retaliation claim is dismissed with prejudice.

## **C**LAIM **2**

From May 16-18, 2003, Plaintiff was on crisis watch after he was observed cutting on himself and making a noose.  On May 16, Defendant Doe 1 placed him in a cell completely naked, although the cell was very cold.  The next day, Plaintiff complained to Defendant Couch about the cold; she told him she would get him a blanket and foam mattress.   Later that afternoon, Plaintiff asked Officer Cruise (not named as a defendant) about access to his personal property; Cruise advised him that per orders from Defendant Markel, Plaintiff could not have any personal property due to "being on security strip out."  Dissatisfied with this response, Plaintiff began to cut himself again; he was later taken to the infirmary and placed in four-point restraints.  While in restraints, Defendant Qualls inserted a catheter into his penis despite his objections; she told him that she was acting on orders from Defendant Chandra.  Plaintiff claims that it was extremely cold in the infirmary, and the restraints were too tight on his chest and thighs.  The restraints were removed after 16 hours, but he was left in the holding cell with only a smock to wear; he was not provided with a blanket and mattress until May 19.

*Cold*

Prisoners have an Eighth Amendment right to adequate shelter, including a right to protection from cold. *See Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997). To assess whether cold cell temperatures constitute cruel and unusual punishment, courts must consider factors including "the severity of the cold; its duration; whether the prisoner has alternative means to protect himself from the cold; the adequacy of such alternatives; as well as whether he must endure other uncomfortable conditions as well as cold." *Id.* at 644; *see also Palmer v. Johnson*, 193 F.3d 346 (5th Cir. 1999) (finding that exposure to extreme cold for 17 hours could constitute Eighth Amendment violation); *Henderson v. DeRobertis*, 940 F.2d 1055, 1058 (7th Cir. 1991) (finding that deprivation of blankets for four days in extreme cold could constitute Eighth Amendment violation). The cold need not present an imminent threat to the inmate's health to implicate the Eighth Amendment. *See Dixon*, 114 F.3d at 642.

In this claim, Plaintiff makes few allegations against any specific defendant regarding the cold temperatures. He alleges that Doe initially placed him in the cell after his suicide attempt, and that Couch told him that she would bring him a mattress and blanket when he complained to her about the cold. Apparently she did not act quickly enough on that promise, as Plaintiff began to cut on himself and was taken to the infirmary a few hours later. Unfortunately, it was no warmer in the infirmary, yet Clover did not provide him with anything to protect him from the cold.

Based on the allegations in the complaint, the Court is unable to dismiss this claim against Clover, Couch and Doe at this point in the litigation. *See* 28 U.S.C. § 1915A.

*Medical Care*

The only medical care claim presented by this scenario is Qualls's insertion of a catheter per Chandra's instructions. However, these allegations do not suggest that either Qualls or Chandra was

deliberately indifference to Plaintiff's medical needs. *See Estelle,* 429 U.S. at 106; *Jones v. Simek,* 193 F.3d 485, 489 (7th Cir. 1999); *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1996), *cert. denied,* 519 U.S. 897 (1996). Accordingly, this medical care claim against Qualls and Chandra is dismissed from this action with prejudice.

*Property*

After his suicide attempt, Plaintiff was placed in a crisis care watch, with no property. When he asked Cruise about access to his property, Cruise told him that per Markel's instruction, Plaintiff could not have access to his property due to his strip-out status.

The only constitutional right that might be implicated by these facts is Plaintiff's right, under the Fourteenth Amendment, to be free from deprivations of his property by state actors without due process of law. To state a claim under the due process clause of the Fourteenth Amendment, a plaintiff must establish a deprivation of liberty or property *without due process of law*; if the state provides an adequate remedy, a plaintiff has no civil rights claim. *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy). The Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILCS 505/8 (1995). Accordingly, Plaintiff has no claim under Section 1983, and this claim against Markel is dismissed from this action with prejudice.

*Retaliation*

Plaintiff claims that all of these actions were done in retaliation. Once again, he makes no allegation that he had engaged in any protected action that was the motivating factor behind any of these actions. Therefore, this retaliation claim is dismissed with prejudice.

- 7 -

**CLAIM 3**

In August 2002, Plaintiff had another inmate, Wade Thomas, help him prepare a complaint. Before Thomas had completed the complaint, Plaintiff was moved to another wing of the prison. Thomas agreed to send the completed complaint to Defendant Osman in the law library, where Plaintiff could retrieve it. Plaintiff later asked Defendant Hosch to retrieve that complaint from Osman for him, but neither Hosch or Osman ever delivered that document to him. As a result, Plaintiff claims that he missed the statute of limitations for filing those unspecified claims. Plaintiff also alleges that Hosch would not allow him to meet with other inmates for assistance with an appeal from another case in this District. As a result, he claims his was unable "to properly appeal" the jury verdict in that case. *See Mounson v. Hinsley*, Case No. 00-cv-209-GBC (S.D. Ill., filed March 20, 2000).

The Seventh Circuit recently clarified the pleading standard when an inmate brings a claim regarding denial of access to the courts:

> [T]he pleading standard applicable to denial of access claims is indeed notice pleading, but . . . "the mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoners rights; his right is to access *the courts*, and only if the defendants' conduct prejudices a potentially meritorious challenge to the prisoner's conviction, sentence, or conditions of confinement has this right been infringed ···· [A] prisoner's complaint [must therefore] spell out, in minimal detail, the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions. Requiring the complaint to include the basic allegations of the prejudice suffered serves the traditional purpose of notice pleading: it gives defendants fair notice of the claims against them and a reasonable opportunity to form an answer" (emphasis added).

*Pratt v. Tarr*, 464 F.3d 730, 732 (7th Cir. 2006), *quoting Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006).

Applying these standards to the allegations in the complaint, the Court is unable to dismiss

this claim against Osman and Hosch at this point in the litigation.

## CLAIM 4

On November 2, 2002, Plaintiff had a physical altercation with members of the security staff, resulting in an injury to his left baby finger. When medical treatment was not immediately forthcoming, Plaintiff "was forced to cut [him]self," which garnered sufficient attention to be placed on suicide watch. Because Plaintiff was on a permanent "med hold," Defendants Mileur, Qualls, Simmons, Watkins, Montgomery and Powers would not provide him with any pain medication for his finger, which was "sprung" but not broken. He also claims that Mileur would not allow Qualls to bandage the self-inflicted cuts on his left arm. Finally, he claims that when he complained to Defendant Stevens about being in pain and being cold, all she did was provide him with a smock.

*Medical Care*

Two separate medical claims are intertwined in this situation: first, that he was not provided with pain medication for his finger and, second, that his cuts were not bandaged. As stated above, the Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle*, 429 U.S. at 104. This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106. *See also Jones v. Simek,* 193 F.3d 485, 489 (7th Cir. 1999); *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1996), *cert. denied,* 519 U.S. 897 (1996).

The Seventh Circuit's decisions following this standard for deliberate indifference in the denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm. The Circuit also recognizes that a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth

Amendment constitutional violation.

> Neglect of a prisoner's health becomes a violation of the Eighth Amendment only if the prison official named as defendant is deliberately indifferent to the prisoner's health – that is, only if he 'knows of and disregards an excessive risk to inmate health or safety.'

*Williams v. O'Leary*, 55 F.3d 320, 324 (7th Cir.), *cert. denied,* 516 U.S. 993 (1995).

In this case, Plaintiff's allegations against Mileur, Qualls, Simmons, Watkins, Montgomery and Powers do not support a claim that any of them acted with deliberate indifference. Therefore, Plaintiff has failed to state a claim upon which relief may be granted, and this medical care claim is dismissed from this action with prejudice.

*Cold*

As discussed above in Claim 2, prisoners have an Eighth Amendment right to adequate shelter, including a right to protection from cold. *Dixon*, 114 F.3d at 642. In *this* claim, Plaintiff alleges that he complained to Stevens about the cold; in response, she provided him with a smock to wear. Thus, from the allegations in the complaint, it is clear that Stevens did not exhibit deliberate indifference to Plaintiff's complaints about the cold. Accordingly, this claim is also dismissed from this action with prejudice.

## CLAIM 5

On April 24, 2002, Plaintiff filed a grievance against Defendant Crespi. Three days later, Plaintiff was moved to another cell because the lock on his cell door was defective. Plaintiff was not allowed to move all of his personal property to the new cell. Instead, Defendants Null, Wolff, Crespi, Hoehner and Blair performed a cell search of his original cell, destroying much of his property in the process; Plaintiff specifically states, however, that Defendant Sams did not go into his cell to participate. Plaintiff states that a shake-down had just been done the prior day, and he

alleges that the only reason Defendants went into his cell was out of retaliation for the grievance he filed against Crespi.

*Property*

As discussed above in Claim 2, to state a claim under the due process clause of the Fourteenth Amendment, a plaintiff must establish a deprivation of liberty or property *without due process of law*; if the state provides an adequate remedy, a plaintiff has no civil rights claim. *Hudson*, 468 U.S. at 530-36.  *See also Murdock*, 193 F.3d at 513; *Stewart*, 5 F.3d at 1036. Accordingly, Plaintiff has no claim under Section 1983, and his deprivation-of-property claim is dismissed from this action with prejudice.

*Retaliation*

As stated above in Claim 1, prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Walker*, 288 F.3d 1005; *DeWalt*, 224 F.3d 607; *Babcock*, 102 F.3d 267; *Cain*, 857 F.2d 1139 (7th Cir. 1988). Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs*, 286 F.3d at 439.  Therefore, at this point in the litigation, the Court is unable to dismiss this retaliation claim against Null, Wolff, Crespi, Hoehner and Blair.  However, because Plaintiff admits that Sams did not participate in this shake-down, Sams in dismissed from this claim with prejudice.

**CLAIM 6**

Plaintiff states that he is infected with the Hepatitis-C virus. However, he alleges that he has not been provided with any treatment for this condition since his arrival at Tamms in 1998.  He further alleges that Defendants Caliper and Powers have denied him this medical treatment in retaliation for another lawsuit Plaintiff filed against Powers.

It is beyond debate that Hepatitis-C is a serious medical condition. Therefore, allegations that Defendants have failed to provide any medical treatment for this condition cannot be dismissed at this time. As for his retaliation claim, Plaintiff has alleged "the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs*, 286 F.3d at 439. Accordingly, the Court is unable to dismiss any portion of Claim 6 at this time.

### CLAIM 7

Plaintiff states that on numerous occasions, he cut himself while Defendants Reynolds and Pearson were on duty during the midnight shift. He alleges that they were aware of his actions, yet neither one take actions to stop him from inflicting injury to himself. He further alleges that when he showed them the bloody scratches on his arms, they directed him to wash it off and go to sleep. He then states that on September 29, 2002, at approximately 1:30 AM, he notified Pearson in writing that he was going to start cutting himself if she refused to talk with him about his problems. Apparently she was unable to make time to chat with him that night, nor did Chandra arrive as demanded, so twenty minutes later Plaintiff started to cut himself. Early the next morning, Officer Studer (not named as a defendant) instructed Plaintiff to clean the blood off the cell walls while Studer called the mental health department.

As demonstrated by the allegations to this point, Plaintiff has a habit of self-mutilation, a habit that Defendants are well aware of. By examining his scratched arms and advising him to wash up, Reynolds and Pearson (both nurses) apparently made a professional judgment that his self-inflicted wounds were merely superficial; such actions do not support a claim of deliberate indifference. As for the incident of September 29, Plaintiff makes no allegations to suggest that Pearson acted with deliberate indifference in failing to talk with him that night or failing to call Chandra, nor does he allege that he suffered any serious physical injury as a result of his self-

inflicted wounds. Accordingly, this claim is dismissed from this action with prejudice.

**CLAIM 8**

On October 6, 2002, Plaintiff was placed in four-point restraints upon the orders of Chandra, although Plaintiff claims that the restraints were unnecessary. He was unable to urinate into a cup while it was held by the nurse so, after she left, he urinated on the floor. The next day, Wright, Neighbors and Stewart released two of his restraints, but when the restraints were reattached, they were tighter than they had been before. Later that morning, Powers inserted a catheter into his penis. When officers later came to do the routine release of the restraints, Defendant Walton made derogatory comments. She then flicked his catheter from side to side, causing him extreme pain. Walton continued this behavior throughout the day; Reynolds observed these acts but failed to intervene.

When Wright, Neighbors and Stewart came to release his restraints at midday, Plaintiff complained that he was unable to eat laying flat on his back. He was given only five minutes to eat some of his lunch with one hand free; the hood was placed back over his head while he still had a mouthful of crackers. He claims that Neighbors hit him hard twice on the back of his neck; Powers later refused to provide him with medical treatment for his sore neck.

*Excessive Force*

Several claims of excessive force can be extrapolated from this allegations. First is Plaintiff's claim regarding overly tight restraints placed on him by Chandra, Wright, Neighbors and Stewart. Next is Walton's actions of flicking at his catheter throughout the day. Finally, there is Neighbors's action of striking him on the back of the neck while hooded.

As set forth above in Claim 1, the intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation

of the Eighth Amendment and is actionable under Section 1983. *Hudson*, 503 U.S. at 6-7 ; *DeWalt*, 224 F.3d at 619. Applying this standard to the allegations stated above, the Court is unable to dismiss any of these three excessive force claims.

*Other Claims*

Several other allegations are made that could be interpreted as additional claims. First, Plaintiff felt compelled to urinate on the floor, rather than to do so in a cup while it was held by an unnamed nurse. Second, Powers inserted a catheter. Third, Reynolds may have observed Walton's actions involving his catheter. Fourth, Walton and Wright did not allow him sufficient time to eat his meal. Fifth, Powers did not provide medical treatment after he was struck on the neck by Neighbors. None of these allegations presents a viable constitutional claim; therefore, these claims are dismissed from this action with prejudice.

### CLAIM 9

At approximately 2:00 AM on February 7, 2003, Plaintiff informed Defendant Pearson that he was having a crisis and was thinking about hurting himself. About 15 minutes later, Plaintiff made the same statement to Defendant Busby. Twenty minutes later, when Busby made a wing check, Plaintiff showed him a noose he had made, telling him he needed to speak with a nurse. Over the next two hours Busby made regular checks on Plaintiff; each time Plaintiff requested to see a nurse, and Busby advised him that a nurse had been told of his request. Shortly before 4:00 AM, Plaintiff began cutting on himself, which was witnessed by Defendant Sanders. An hour later, after talking to Captain Reagan (not named as a defendant), Plaintiff was taken to the nurses' station. Pearson cleaned his wounds and had him returned to his cell; no mental health personnel were summoned at that time.

As discussed above in Claim 1, "the need for a mental illness to be treated could certainly

be considered a serious medical need." *Sanville*, 266 F.3d at 734; *Wellman*, 715 F.2d 269. However, "negligence alone, or simple malpractice, is insufficient to state a claim for relief," *Kelly*, 899 F.2d at 616, as is the provision of medical treatment other than that preferred by the inmate. *Estelle*, 429 U.S. at 107. *See also Jones,* 193 F.3d at 489; *Steele*, 82 F.3d at 178.

In this case, the Court finds that the allegations against Pearson, Busby and Sanders do not present a viable constitutional claim under the Eighth Amendment violation. Accordingly, Claim 9 is dismissed from this action with prejudice.

## CLAIM 10

On January 29, 2003, Plaintiff once again caused injury to himself. He was told that mental health personnel had been notified, and shortly thereafter Defendant Kwasniewski arrived on the wing. He claims that she completely ignored his requests for help, although he claims she knew he was bleeding from his self-inflicted injuries. Despite his request for help, after speaking with other inmates on the wing, she left him in his cell bleeding.

Based on the standards set forth above in Claim 9, the Court is unable to dismiss this claim against Kwasniewski at this point in the litigation.

## CLAIM 11

On June 14, 2003, Plaintiff was once again placed on suicide watch after cutting himself. He claims he was left naked in a cold cell until June 15, when Defendant Stevens spoke with him to ascertain his condition. On June 16, Defendant Chandra advised Plaintiff that if he could go for 24 hours without harming himself, he would be allowed to have some of his property. Later that evening he was given a smock to wear, which he claims was insufficient protection from the cold. On June 17, he spoke with Defendant Peppers, who brought him a bar of soap and a mattress, but

still he was cold.[1]

*Cold*

As discussed above in Claim 2, prisoners have an Eighth Amendment right to adequate shelter, including a right to protection from cold. *Dixon*, 114 F.3d at 642. In this claim, Plaintiff alleges that Stevens, Chandra and Peppers refused to provide him with sufficient clothing to protect him from the cold, and that he was subjected to those cold conditions for more than two days. Based on these allegations, the Court is unable to dismiss this portion of Claim 11 at this time.

*Retaliation*

Plaintiff claims that all of these actions were done in retaliation. Once again, he makes no allegation that he had engaged in any protected action that was the motivating factor for retaliation. Therefore, this retaliation claim is dismissed with prejudice.

### SURVIVING CLAIMS

To summarize the above discussion, only these claims remain pending in this action.

**CLAIM 1** against Folsom and Hilliard for use of excessive force;

**CLAIM 2** against Clover, Couch and Doe for subjecting him to excessive cold;

**CLAIM 3** against Osman and Hosch for interfering with his access to the courts;

**CLAIM 5** against Null, Wolff, Crespi, Hoehner and Blair for retaliation;

**CLAIM 6** against Caliper and Powers for failing to provide medical treatment;

**CLAIM 8** against Chandra, Wright, Stewart, Neighbors and Walton for excessive force;

**CLAIM 10** against Kwasniewski for failure to provide medical treatment;

**CLAIM 11** against Chandra, Stevens and Peppers for subjecting him to excessive cold.

---

[1] In paragraph 179, Plaintiff also lists Cheryl Couch in connection with this claim. The remaining paragraphs, however, contain no allegations regarding her actions or inactions. Therefore, the Court does not consider her to be a defendant in Claim 11.

**DISPOSITION**

**IT IS HEREBY ORDERED** that the following claims are **DISMISSED** from this action with prejudice:

**CLAIM 1:** against Gibson and Neighbors for use of excessive force; against Watts and Stewart for failing to intervene; against Pratis for an unlawful search of his body; against Fornear for denial of mental health treatment; and against Fornear for retaliation;

**CLAIM 2:** against Qualls and Chandra for improper medical care; against Markel for withholding his personal property; against all Defendants for retaliation;

**CLAIM 4:** in its entirety;

**CLAIM 5:** against Null, Wolff, Crespi, Hoehner, Blair and Sams for confiscation of property; against Sams for retaliation;

**CLAIM 7:** in its entirety;

**CLAIM 8:** against Powers, Reynolds, Walton and Wright for miscellaneous claims;

**CLAIM 9:** in its entirety;

**CLAIM 11:** against Chandra, Stevens and Peppers for retaliation.

**IT IS FURTHER ORDERED** that Defendants **BUSBY, FORNEAR, GIBSON, MILEUR, MONTGOMERY, PEARSON, PRATIS, QUALLS, REYNOLDS, SAMS, SANDERS, SIMMONS, WATKINS** and **WATTS** are **DISMISSED** from this action with prejudice.

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for Defendants **BLAIR, CALIPER, CHANDRA, CLOVER, COUCH, CRESPI, FOLSOM, HILLIARD, HOEHNER, HOSCH, KWASNIEWSKI, NEIGHBORS, NULL, OSMAN, PEPPERS, POWERS, STEVENS, STEWART, WATSON, WOLFF** and **WRIGHT**. The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the complaint to the United

States Marshal for service.

      The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on Defendants **BLAIR, CALIPER, CHANDRA, CLOVER, COUCH, CRESPI, FOLSOM, HILLIARD, HOEHNER, HOSCH, KWASNIEWSKI, NEIGHBORS, NULL, OSMAN, PEPPERS, POWERS, STEVENS, STEWART, WATSON, WOLFF** and **WRIGHT** in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure. Process in this case shall consist of the complaint, applicable forms 1A and 1B, and this Memorandum and Order. For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form. Service shall not be made on the John Doe Defendant until such time as Plaintiff has identified him by name on a USM-285 form and in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for this individual.

      With respect to former employees of Illinois Department of Corrections who no longer can be found at the work address provided by Plaintiff, the Department of Corrections shall furnish the Marshal with the Defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal. Address information obtained from I.D.O.C. pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

      The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received. If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the

request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant. Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required. Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon defendant or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court. He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to defendant or his counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts. This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.

**IT IS SO ORDERED.**

**Dated: December 8, 2006.**

                                          **s/ J. Phil Gilbert**
                                          **U. S. District Judge**