IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| HENRY MOUNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RAKESHA CHANDRA, CHERYL COUCH, | ) | |
| KATHERINE CLOVER, JILL STEVENS, | ) | |
| ROCKY PEPPERS, KRISTIN | ) | Case No. 3:04-cv-365 JPG |
| KWASNIEWSKI, TERRY CALIPER, | ) | |
| MARVIN POWERS, TWYLA WATSON, | ) | |
| TOMA OSMAN, JOANNA HOSCH, JACOB | ) | |
| NULL, DERK WRIGHT, SCOTT STEWART, | ) | |
| BRET NEIGHBORS, DAVID FOLSOM, | ) | |
| PAUL HILLIARD, C/O BLAIR, JOHN | ) | |
| WOLFF, BOBBY CRESPI, AND BRAD | ) | |
| HOEHNER, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATIONS**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by

United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of

Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the Motion for

Summary Judgment filed by Defendants Couch, Clover, and Kwasniewski (Doc. 51). For the

reasons set forth below, it is **RECOMMENDED** that the motion be **GRANTED** and that the Court

adopt the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

*Procedural History*

Plaintiff filed his complaint in this action pursuant to 42 U.S.C. § 1983 on May 28, 2004,

alleging violations of his constitutional rights. The Court completed its threshold review of the

action on December 8, 2006 (Doc. 11). The Court determined that Plaintiff's complaint presented

eleven claims.  As relevant here, the Court determined that Plaintiff stated a claim of deliberate indifference to a serious medical need by Defendant Kwasniewski for denying him medical treatment for self-inflicted injuries on January 29, 2003, and a claim for deliberate indifference to Plaintiff's conditions of confinement against Defendants Clover and Couch for exposing him to cold temperatures from May 16 through 18, 2003.[1]

After discovery, all Defendants moved for summary judgment.[2]  Defendants Couch, Clover, and Kwasniewski filed the instant Motion for Summary Judgment, arguing that none of them were deliberately indifferent to Plaintiff on any basis (Doc. 51).

***Defendant Kwasniewski***

Plaintiff claims that on January 29, 2003, he cut himself.  He informed Lieutenant Crippen that he wanted to speak with someone from the mental health department.  At approximately 12:30 p.m. Defendant Kwasniewski was on Plaintiff's wing seeing another inmate.  Plaintiff yelled at her that he had cut himself, yet Defendant Kwasniewski did not respond, instead moving to another inmate's cell.  Later, as Defendant Kwasniewski was leaving the wing, Plaintiff yelled at her again, but she did not respond and "left me in my cell bleeding" (Doc. 1-2, p. 19).

In his deposition, Plaintiff stated that he did not want Defendant Kwasniewski to provide him

---

[1]The undersigned recognizes that the Seventh Circuit recently confirmed that separate, unrelated claims belong in different suits. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Given the age of this case (now going on five years), and the fact that the case was already three and one half years old at the time *George* was issued, the undersigned recommends that the Court's legitimate aim of judicial efficiency would be severely undermined by severing the unrelated claims in this case at this stage of the litigation.

[2]Two other motions for summary judgment are pending in the action: one by Defendants Blair, Caliper, Crespi, Folsom, Hilliard, Hoehner, Hosch, Neighbors, Null, Osman, Stewart, Wolfe, and Wright (Doc. 57); the other by Defendants Chandra, Stevens, Peppers, Powers, and Walton (Doc. 59).

with medical treatment, but to put him on "watch" to prevent him from cutting himself (Doc. 51-2, p. 6; Plaintiff's Deposition Trans. p. 95).

In her affidavit in support of the motion for summary judgment, Defendant Kwasniewski avers that she was seeing another inmate on Plaintiff's wing on January 29, 2003. She recalls Plaintiff yelling at her from his cell that he wanted to see her, but he did not state that he was bleeding, nor did he report that he had any specific mental health needs. Defendant Kwasniewski averred that it was common for Plaintiff to shout at her from his cell when she was on his wing. Defendant Kwasniewski knew that Rocky Peppers, another mental health professional at Tamms, was scheduled to see Plaintiff within the hour (Doc. 51-3, p. 1-2; Kwasniewski Affidavit, p. 2). After she left the wing, Defendant Kwasniewski reviewed Plaintiff's chart and saw that Plaintiff had threatened to cut himself. Because Mr. Peppers would be seeing Plaintiff shortly, Defendant Kwasniewski did not believe an additional appointment with her was necessary. Mr. Peppers arrived at Plaintiff's cell forty minutes later, at 1:10 p.m. Plaintiff refused to see him, and refused to sign the refusal form. Defendant Kwasniewski opined that had Mr. Peppers seen Plaintiff actively bleeding, he would have reported that fact in Plaintiff's medical chart and would have made an assessment for crisis care placement. Because no such entry existed, Defendant Kwasniewski believes Plaintiff was not actively bleeding (Kwasniewski Affidavit, p. 3 and Exhs. 1-A and 1-B). At 8:30 p.m., Nurse Carol George (not a defendant) evaluated Plaintiff and found that he was not actively bleeding, but was threatening self harm (Kwasniewski Affidavit, pp. 3-4, Exhs. 1-C, 1-D). Nurse George recorded the following in Plaintiff's medical chart: "Offender trying to manipulate this writer into staying at cell door" (Kwasniewski Affidavit, p. 4, Exh. 1-E). Defendant Kwasniewski opined that Plaintiff "routinely and continuously acts out through manipulative

behavior in an effort to garner attention from female nurses so that he may act sexually inappropriate in front of them" (Kwasniewski Affidavit, p. 4). Plaintiff does not address this claim in his responses to the motions for summary judgment.

***Defendants Clover and Couch***

On May 16, 2003, Plaintiff was cutting himself and had fashioned a noose inside his cell. As a result of this behavior, an unnamed prison official placed Plaintiff on "crisis care watch," naked, in an "extremely cold" cell. On the morning of May 17, Plaintiff told Defendant Couch that he was cold. She responded that she would procure him a safety blanket and a foam mattress. That afternoon, Plaintiff began cutting himself. He was removed to the infirmary and placed in restraints for sixteen hours. He was so cold that he was "numb all over." The same day, Defendant Clover came to Plaintiff's cell. She would not give Plaintiff any of his property. Thus, he was forced to stay in the extremely cold cell. All told, Plaintiff remained in the cold cell for 48 hours before he was given any clothing (Doc. 1 pp. 8-9).

The affidavits and exhibits in support of the motion for summary judgment indicate the following: on May 16, 2003, Plaintiff cut himself on the left arm. He was taken to the medical treatment room where his superficial, three and one half inch wound was cleansed with hydrogen peroxide. The wound was not bleeding and did not require dressing (Doc. 51-5, Clover Affidavit, pp. 2-3, Exhs. 2-A, 2-B, 2-E, and 2-F). Dr. Chandra ordered Plaintiff placed on crisis care and suicide watch without any personal property (Clover Affidavit, p. 3, Exh. 2-C). On May 17 at 9:00 a.m., Defendant Couch assessed Plaintiff's mental condition (Doc 51-10, Couch Affidavit, p. 2, Exh. 3-A). According to her assessment notes, Plaintiff made no complaints at that time regarding the temperature of his cell and no requests for a blanket or other property. Defendant Couch had no

reason to believe Plaintiff was subjected to unreasonably cold temperatures (Couch affidavit, p. 3). Defendant Couch saw Plaintiff again that afternoon at 3:35 p.m. He was agitated and yelling (Couch Affidavit, p. 4, Exh. 3-A). He did not complain about the temperature inside the cell (Couch Affidavit, p. 4). Based on Plaintiff's behavior, Defendant Couch made a referral to Dr. Chandra, who ordered Plaintiff placed in therapeutic restraints (Couch Affidavit, p. 4; Clover Affidavit, p. 3, Exhs. 2-F and 2-G). That evening, Plaintiff complained to Linda Mileur (not a defendant) about the cold cell (Clover Affidavit, p. 3, Exh. 2-J).

Defendant Clover first saw Plaintiff on May 18, at 8:30 a.m. Defendant Clover did not enter Plaintiff's cell; Plaintiff did not complain about the temperature in his cell. Defendant Clover did not have any knowledge of the temperature inside the cell. Plaintiff did not exhibit any behaviors suggesting he was cold (Clover Affidavit, pp. 4-5). Defendant Clover recorded in Plaintiff's medical chart that he had been denied property due to the security concern that he would cover the cell window with it (Clover Affidavit, Exh. 2-L). At 9:00 a.m., Plaintiff asked Nurse M.J. Simmons (not a defendant) for a blanket (Clover Affidavit, p. 5, Exh. 2-L). At 3:20 p.m. he was given a safety smock, but not a blanket due to security concerns (Clover Affidavit, pp. 5-6, Exh. 2-M). At 8:00 p.m. Nurse Laura Qualls (not a defendant) reported that Plaintiff felt better with the smock and that he was cold when he was naked (Clover Affidavit, p.6, Exh. 2-N). The medical records do not indicate Plaintiff made any other complaints of being cold (Clover Affidavit, p. 7). Defendant Clover avers that Plaintiff made no complaints to her personally that he was cold, and she had no information to indicate that Plaintiff's cell was a temperature that placed him at a substantial risk of harm (Clover Affidavit, p. 7). She further avers that Plaintiff was denied property on those dates "as a result of his own self-harming behavior" and his "inability to refrain from harming himself or

refrain from breaking rules, such as covering up his crisis cell window while on suicide watch, thereby preventing staff from observing him in an effort to prevent him from harming himself further" (Clover Affidavit, p. 7). Plaintiff did not address this claim in his responses to the motions for summary judgment.

CONCLUSIONS OF LAW

### *Summary Judgment Standard*

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The burden is upon the moving party to establish that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A fact is material if it is outcome determinative under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ballance v. City of Springfield, Illinois Police Department*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004). *See also Anderer v. Jones*, 385 F.3d 1043, 1064 (7th Cir. 2004). A showing of a mere factual disagreement between the parties is insufficient; the factual issue must be "material," meaning that

the issue must be one affecting the outcome of the suit. *See Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001).

The moving party bears the initial burden of producing evidence that identifies "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes to demonstrate the absence of a genuine issue of material fact." *Outlaw*, 259 F.3d at 837 (quoting *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996)). After the moving party has satisfied its burden to establish that no genuine issue of material fact exists, the burden shifts to the non-moving party to "set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "may not rely merely on allegations or denials in its own pleading." *Id.* The opposing party must, instead, "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.

Summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

*Defendant Kwasniewski*

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, the Plaintiff must first show that his condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-653 (7th Cir. 2005) (citations and quotation marks omitted). With respect to the objective component of that inquiry, "[a] 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Foelker v. Outagamie County,* 394 F.3d 510, 512-513 (7th Cir. 2005) (citation omitted).

Second, a prisoner must show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987). Put another way, the Plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial

evidence, . . . and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (citations omitted).

Based on these legal standards, Plaintiff has not sustained his burden of showing that Defendant Kwasniewski acted with deliberate indifference to his serious medical or mental health needs. Defendant Kwasniewski avers that she knew a mental health professional was scheduled to see Plaintiff within the hour, and after reviewing his chart, determined in her professional judgment that Plaintiff did not need an additional visit from her at that time. In the face of Defendant Kwasniewski's affidavit that she did not believe Plaintiff needed additional mental health treatment, Plaintiff has not provided any facts or pointed to any evidence in response that would demonstrate a genuine issue of material fact as to Defendant Kwasniewski's state of mind, nor any evidence that she acted deliberately or recklessly to his medical needs. Accordingly, the undersigned **RECOMMENDS** that summary judgment be granted in favor of Defendant Kwasniewski on the deliberate indifference claim against her.

### *Defendants Clover and Couch*

To prevail on an Eighth Amendment conditions-of-confinement claim, a plaintiff must demonstrate that the harm imposed to him because of his cell conditions was "sufficiently serious" so as to deprive him of "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prisoner does not have a right to confinement in comfort, *Murphy v. Walker*, 51 F.3d 714, 721 (7th Cir. 1995), but prisoners are entitled to adequate shelter, which includes protection from "extreme cold," *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997). In evaluating a claim of extreme cold, the court is to assess various factors, including whether the

prisoner had alternative means of warmth, the adequacy of those alternatives, the length of exposure to cold, and whether he was forced to endure other harsh conditions in addition to the cold. *Id.* at 644. The Seventh Circuit holdings are limited to instances of extremely cold temperatures or of extended exposure to cold. *See DelRaine v. Williford*, 32 F.3d 1024, 1031 (7th Cir. 1994) (broken cell windows; wind chills between negative 40 and negative 50 degrees); *Henderson v. DeRobertis*, 940 F.2d 1055, 1056 (7th Cir. 1991) (malfunctioning heating system when temperature was 22 degrees below zero); *Murphy*, 51 F.3d at 720-21 (unheated cell and no blankets or clothing for a week and a half).

If a plaintiff establishes sufficiently cold conditions to meet the objective standard, he must then show that prison officials acted with deliberate indifference to the risk of harm imposed by the cold conditions. *DelRaine*, 32 F.3d at 1036; *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). This means that "the official knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it," *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). Deliberate indifference cannot be established by a showing of negligence or a claim that an official "should have known" of the risk. *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir.2004). An inmate must establish that "the official received information from which the inference could be drawn that a substantial risk existed, and that the official actually drew the inference." *Townsend*, 522 F.3d at 773.

Plaintiff has failed to meet his burden of establishing that either Defendants Clover or Couch acted with deliberate indifference to a substantial risk of harm imposed by the alleged cold conditions of his cell. Even if the Plaintiff establishes that his cell was objectively cold, he cannot sustain a claim unless he shows that either or both Defendants Clover and Couch acted with

deliberate indifference to the risk of harm imposed. The medical records indicate that Plaintiff complained of cold to Linda Mileur on May 17, and he asked Nurse Simmons for a blanket on May 18. He was given a smock later that day. He reported to Nurse Qualls that he felt better with the smock on because he was cold without it. Defendant Couch avers that she saw Plaintiff twice between May 16 and 18, and neither time did he complain to her of his cell being cold. Defendant Clover saw Plaintiff on May 18. He did not complain of being cold to her and she did not notice any behaviors that would indicate Plaintiff was cold. Both Defendants aver that they had no personal knowledge that Plaintiff was cold or that the cold imposed an excessive risk of harm.

To demonstrate deliberate indifference, Plaintiff would have to show that Defendants Couch and Clover knew of the cold conditions of the cell, yet disregarded the risk of harm the cold imposed. Plaintiff presents no evidence that would raise a genuine issue of material fact regarding whether Defendants Couch and Clover knew of, yet ignored, an excessive risk of harm imposed by the cold conditions in the cell. Thus, he has failed to make "a sufficient showing on an essential element of h[is] case with respect to which []he has the burden of proof." *Celotex*, 477 U.S. at 323. Therefore, Defendants Couch and Clover are entitled to judgment as a matter of law. Accordingly, it is **RECOMMENDED** that summary judgment be **GRANTED** in favor of Defendants Couch and Clover.

## CONCLUSION

For the reasons set forth above, it is hereby **RECOMMENDED** that the Motion for Summary Judgment filed by Defendants Couch, Clover, and Kwasniewski (Doc. 51) be **GRANTED,** and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1, the parties shall have ten (10) days

after the service of this Recommendation to file written objections thereto.  The failure to file a timely objection may result in the waiver of the right to challenge these Recommendations before either the District Court or the Court of Appeals.  *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED:  March 26, 2009**

**s/ *Donald G. Wilkerson***
**DONALD G. WILKERSON**
**United States Magistrate Judge**