IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

HENRY MOUNSON, )
)
      Plaintiff, )
)
v. )
)
RAKESHA CHANDRA, CHERYL COUCH, )
KATHERINE CLOVER, JILL STEVENS, )
ROCKY PEPPERS, KRISTIN )      Case No. 3:04-cv-365 JPG
KWASNIEWSKI, TERRY CALIPER, )
MARVIN POWERS, TWYLA WATSON, )
TOMA OSMAN, JOANNA HOSCH, JACOB )
NULL, DERK WRIGHT, SCOTT STEWART, )
BRET NEIGHBORS, DAVID FOLSOM, )
PAUL HILLIARD, C/O BLAIR, JOHN )
WOLFF, BOBBY CRESPI, AND BRAD )
HOEHNER, )
)
      Defendants. )

## REPORT AND RECOMMENDATIONS

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by

United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of

Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the Motion for

Summary Judgment filed by Defendants Blair, Caliper, Crespi, Folsom, Hilliard, Hoehner, Hosch,

Neighbors, Null, Osman, Stewart, Wolfe, and Wright (Doc. 57). For the reasons set forth below,

it is **RECOMMENDED** that the motion be **GRANTED** and that the Court adopt the following

findings of fact and conclusions of law.

### I. FINDINGS OF FACT

**A.**     **Procedural History**

Plaintiff, a former inmate at Tamms Correctional Center ("Tamms"), filed his complaint in

this action on May 28, 2004, alleging violations of his constitutional rights. The Court completed

its threshold review of the action on December 8, 2006 (Doc. 11).  The Court determined that Plaintiff's complaint presented eleven claims.  As relevant here, the Court determined that Plaintiff stated a claim against Defendants Folsom and Hilliard of unconstitutional use of excessive force on March 19, 2003 ("claim one"); a claim against Defendants Osman and Hosch of denial of access to courts ("claim three"); a claim against Defendants Null, Wolfe, Crespi, Hoehner, and Blair,  who allegedly improperly shook down his cell in retaliation for Plaintiff's exercise of his First Amendment rights ("claim five"); a claim against Defendant Caliper for deliberate indifference to a serious medical need ("claim six"); and a claim against Defendants Chandra, Wright, Stewart, Neighbors, and Walton for unconstitutional use of excessive force on October 6, 2002 ("claim eight").[1]

After discovery, all Defendants moved for summary judgment.[2]  Defendants Blair, Caliper, Crespi, Folsom, Hilliard, Hoehner, Hosch, Neighbors, Null, Osman, Stewart, Wolfe, and Wright filed the instant Motion for Summary Judgment, arguing that each is entitled to judgment in his or her favor (Doc. 57).

---

[1]The undersigned recognizes that the Seventh Circuit recently confirmed that separate, unrelated claims belong in different suits. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Given the age of this case (now going on five years), and the fact that the case was already three and one half years old at the time *George* was issued, the undersigned recommends that the Court's legitimate aim of judicial efficiency would be severely undermined by severing the unrelated claims in this case at this stage of the litigation.

[2]Two other motions for summary judgment are pending in the action: one by Defendants Couch, Clover, and Kwasniewski (Doc. 51); the other by Defendants Chandra, Stevens, Peppers, Powers, and Walton (Doc. 59).

**B.**     ***Claim One***

Plaintiff alleges that on March 19, 2003, while correctional officers were extracting him from his cell, Defendant Folsom twisted the handcuff on his wrist, cutting off his circulation.  Defendant Hilliard bent Plaintiff's previously-injured thumb "in an attempt to break it."  Plaintiff alleges that these actions were done "maliciously with the intent of causing bodily harm" (Doc. 1, p. 7).  Plaintiff filed a grievance alleging excessive force by Defendants Folsom and Hilliard based upon the March 19 cell extraction (Doc. 66-3, p. 1).  A counselor responded to this grievance on April 16, 2003.

In support of their motion for summary judgment, Defendants argue that Plaintiff did not properly exhaust his administrative remedies as to this claim because he did not file an appeal of a grievance on this issue with the Administrative Review Board ("ARB") (Doc. 57-2, Benton Affidavit, p. 5).  Thus, they argue they are entitled to judgment in their favor because Plaintiff cannot bring suit prior to fully exhausting his administrative remedies.

**C.**     ***Claim Three***

Plaintiff alleges that in August 2002, Wade Thomas, a fellow inmate, prepared a lawsuit for Plaintiff to file.  Plaintiff was moved to another wing at Tamms and was unable to obtain the complaint from Inmate Thomas directly.  Plaintiff asked Inmate Thomas to send the complaint to a paralegal in the law library, Defendant Toma Osman, who would forward the complaint to Plaintiff.  Upon moving to the new wing, Plaintiff requested the complaint from another law library paralegal, Defendant Joanna Hosch.  Neither Defendant Osman nor Defendant Hosch provided Plaintiff with the complaint.  Once in the new wing, Plaintiff put in a request for legal assistance from a different inmate in filing an appeal in a civil rights action.  Defendant Hosch refused the request.  Plaintiff alleges that as a result of these actions, he was unable to file the complaint drafted

by Inmate Thomas because the statute of limitations had run, and he was unable to properly appeal the civil rights action because he had no assistance. Plaintiff alleges therefore that Defendants Osman and Hosch denied his right of access to the courts (Doc. 1 p. 10). Plaintiff filed a grievance on this issue on November 6, 2003 (Doc. 1-3, p. 6). A counselor denied the grievance on November 18, 2003.

In support of their motion for summary judgment, Defendants argue that Plaintiff did not properly exhaust his administrative remedies as to this claim because he did not file an appeal of the grievance on this issue with the ARB (Doc. 57-2, Benton Affidavit, p. 5). Thus, they argue they are entitled to judgment in their favor because the Prison Litigation Reform Act bars suits filed before a prisoner has fully exhausted his administrative remedies.

## D.    *Claim Five*

On April 24, 2002, Plaintiff filed a grievance alleging that an unnamed correctional officer had tampered with his food tray (Doc. 66-3, p. 6). In the complaint Plaintiff identifies this correctional officer as Defendant Crespi. On April 27, 2004, Plaintiff was moved to a new cell. He was not allowed to take all of his property with him. While in the new cell, Defendants Null, Wolff, Crespi, Hoehner, and Blair entered his old cell and destroyed his property. Plaintiff alleges that these Defendants had no legitimate reason to enter the cell while he was not present. He alleges that his cell had been "shaken down" only the day before and no contraband had been found. Plaintiff alleges therefore that the only reason for the cell entry and property destruction was retaliation against him for the grievance he had filed about the food tampering (Doc. 1, pp. 12-13). Plaintiff filed a grievance regarding the alleged retaliatory shakedown of his cell on July 25, 2002 (Doc. 66-3, p. 12). A counselor denied the grievance on August 8, 2002.

In support of their motion for summary judgment, Defendants argue that Plaintiff did not properly exhaust his administrative remedies as to this claim because he did not file an appeal of a grievance on this issue with the ARB (Doc. 57-2, Benton Affidavit, p. 5). Thus, they argue they are entitled to judgment in their favor because Plaintiff cannot bring suit prior to fully exhausting his administrative remedies.

## E.    *Claim Six*

Plaintiff alleges that Defendant Terry Caliper has and continues to deny him medical treatment for Hepatitis C, despite his requests for treatment and his complaints of symptoms from the disease. Plaintiff alleges therefore that Defendant Caliper has acted with deliberate indifference to his serious medical needs (Doc. 1, pp. 13-14).

In support of their motion for summary judgment, Defendants argue that Plaintiff did not properly exhaust his administrative remedies as to this claim because he did not file an appeal of a grievance on this issue with the ARB (Doc. 57-2, Benton Affidavit, p. 5). Thus, they argue they are entitled to judgment in their favor because Plaintiff cannot bring suit prior to fully exhausting his administrative remedies.

On August 18, 2002, Plaintiff filed a grievance in which he stated that in July 2002 he sent a newspaper article about Hepatitis C to Defendant Chandra asking him to share it with Defendants Caliper and Powers (Doc. 1-2, pp. 8-9). The article addressed, and Plaintiff specifically asked for a drug treatment called "Pegasys," that he claims has a 61 percent rate of success among Hepatitis C patients. He states that without the treatment, he fears he will develop cirrhosis of the liver and die. He states that Defendant Caliper, by not providing him with the treatment, is waiting for him to get cirrhosis which will lead to his death. In response to the grievance, Defendant Caliper

reported that Plaintiff's requested treatment is an experimental Hepatitis C drug therapy that has not been approved by the Food and Drug Administration. Defendant Caliper further reported that Plaintiff is being treated according to the Illinois Department of Corrections guidelines for the treatment of Hepatitis C, which follows the Centers for Disease Control recommendations. She reported that all of Plaintiffs medical complaints "are screened by trained staff and he is scheduled for further examination when indicated." This grievance is stamped "received" by the Grievance Officer on October 22, 2002, and "received" by the Office of Inmate Issues on November 22, 2002; February 4, 2003; April 24, 2003; and June 9, 2003.

In the motion for summary judgment, Defendants further argue that even if Plaintiff did exhaust his administrative remedies, Defendant Caliper is entitled to judgment in her favor because Plaintiff has not demonstrated that she acted with deliberate indifference to his serious medical needs.

Defendant Caliper, a registered nurse, is the Health Care Unit Administrator at Tamms Correctional Center (Doc. 57-2, Caliper Affidavit, p. 1, ¶ 1). In that position, she directs, coordinates, and reviews activities of the healthcare operations at Tamms in cooperation with the Medical Director (Caliper Affidavit, p. 1, ¶ 2). Defendant Caliper is not a physician and is not trained to diagnose medical conditions or prescribe medications or a course of medical treatment. She cannot overrule the medical decisions of the physicians in the Health Care Unit, and she has no authority to order treatment for an inmate (Caliper Affidavit, p. 1, ¶ 3). Defendant Caliper avers that Plaintiff's Hepatitis C "has been monitored according to the Federal Bureau of Prison Clinical Practice Guidelines for the prevention and treatment of viral hepatitis" (Caliper Affidavit, p. 2, ¶ 5). She further avers that Plaintiff received treatment at Tamms that was "medically indicated." She

avers that she is not aware of any refusal by the medical staff to provide treatment to Plaintiff for his Hepatitis C (Caliper Affidavit, p. 2, ¶ 6).

In his response to the motions for summary judgment, Plaintiff argues that he has not been properly treated for Hepatitis C because he has not received a liver biopsy test. He argues that the Health Care Unit at Tamms is monitoring his disease only by "having my stomach touched or felt on by M.D. Powers every 6 months to a year and to have my blood drawn every six months" (Doc. 65, p. 1). Plaintiff presents evidence that in August 2001 a prison official informed him that he would be seen every four months to monitor his condition (Doc. 66-2, p. 11). Later Defendant Caliper informed him he would be seen only every six months. He argues that this policy change demonstrates Defendant Caliper's deliberate indifference and shows that Defendant Caliper is a liar. He further argues that by personally responding to his grievances, Defendant Caliper prevented a medical professional from evaluating the claims stated therein. He suggests that by denying requests for medical treatment herself, she is acting as a physician and making medical decisions for Plaintiff. In support of his arguments, Plaintiff submits articles from an unidentified prisoner newsletter about Hepatitis C (Doc. 66-2, pp. 3-10). Finally, Plaintiff avers that Defendant Caliper is a witch who is acquainted with Satan. Because of her relationship with Satan, "she is able to influence and/or dictate to: wardens, doctors; Powers, Rhodes, and Chandra and security staff" (Doc. 65, Mounson Affidavit, pp. 5-6).

## F.    *Claim Eight*

Plaintiff alleges that on October 6, 2002, he was subjected to cruel and unusual punishment in violation of the Eighth Amendment when Defendant Chandra ordered him placed in four-point restraints on a hard rubber mat in a cold cell for sixteen hours. The next day, Defendants Wright,

Neighbors, and Stewart released two of the restraints, but when they were reattached, they were too tight and he had difficulty breathing. During this period of restraint he was catheterized on the orders of Defendant Powers. Defendant Walton kept pulling on his catheter causing him extreme pain. Later, while Defendants Stewart and Neighbors were placing a spit hood over his head, Defendant Neighbors punched Plaintiff twice on the back of his neck (Doc. 1, pp. 15-17). The Court construed these events as allegations of excessive force against Defendants Chandra, Wright, Neighbors, and Stewart for the tight restraints, against Defendant Walton for pulling on the catheter, and against Defendant Neighbors for punching him in the neck (Doc. 11, pp. 13-14). Regarding this claim, the instant pending motion for summary judgment was filed only by Defendants Wright, Stewart, and Neighbors. Thus, the Court will analyze this claim only as it relates to those Defendants.

In their motion for summary judgment, Defendants Wright, Stewart, and Neighbors, indicate the following undisputed facts. On October 6, 2002, Dr. Chandra ordered Plaintiff placed in four point restraints because he had been cutting himself (Doc. 57-2, Plaintiff's Deposition Trans. pp. 66-67). He remained in the restraints the next day, October 7, 2002. The restraints were loosened on each limb every two hours to maintain proper circulation to Plaintiff's arms and legs (Plaintiff's Deposition Trans. pp. 69-70). Plaintiff complained that the restraints applied by Defendants Wright, Stewart, and Neighbors were too tight. The nurse checked them and agreed with the three officers that they were properly applied (Plaintiff's Deposition Trans. pp. 104-05). Plaintiff testified in deposition that he did not sustain any injury on October 7, 2002. He did not report any injuries on that date (Plaintiff's Deposition Trans. p. 79). Plaintiff did not address this claim or these defendants in his response to the motions for summary judgment.

## II. Conclusions of Law

### A. *Summary Judgment Standard*

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The burden is upon the moving party to establish that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A fact is material if it is outcome determinative under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ballance v. City of Springfield, Illinois Police Department*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004). *See also Anderer v. Jones*, 385 F.3d 1043, 1064 (7th Cir. 2004).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986); *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 637 (7th Cir. 2001); *Sybron Transition Corporation v. Security Insurance Company of Hartford*, 107 F.3d 1250, 1255 (7th Cir. 1997).

A showing of a mere factual disagreement between the parties is insufficient; the factual issue must be "material," meaning that the issue must be one affecting the outcome of the suit. *See Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir.2005) (other citations omitted)). The moving party bears the initial burden of producing evidence that identifies "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes to demonstrate the absence of a genuine issue of material fact." *Outlaw*, 259 F.3d at 837 (quoting *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996)). After the moving party has satisfied its burden to establish that no genuine issue of material fact exists, the

burden shifts to the non-moving party to "set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "may not rely merely on allegations or denials in its own pleading." *Id.* The opposing party must, instead, "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.

Affidavits filed in support of or opposed to summary judgment must be based upon the personal knowledge of the affiant. *See* Fed. R. Civ. P. 56(e)(1). "[A]lthough personal knowledge may include reasonable inferences, those inferences must be 'grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience.'" *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) (quoting *Visser v. Packer Engineering Associates, Inc.*, 924 F.2d 655, 659 (7th Cir. 1991)). *See also Witte v. Wisconsin Dept. Of Corrections*, 434 F.3d 1031, 1037 (7th Cir. 2006) (affidavit merely repeating unsupported allegations in complaint was not a statement based upon personal knowledge "that may properly be considered in an affidavit"); *Weeks v. Samsung Heavy Industries Co., Ltd.*, 126 F.3d 926, 939 (7th Cir. 1997) ("[A] plaintiff's own uncorroborated testimony is insufficient to defeat a motion for summary judgment.").

**B.     *Exhaustion of Administrative Remedies*[3]**

---

[3]In *Pavey v. Conley*, the Seventh Circuit held that the in suits for damages governed by the PLRA, the Seventh Amendment does not require that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" be resolved by a jury. 544 F.3d 739, 740 (7th Cir. 2008). The Court stated,"in the ordinary case discovery with respect to the merits should be deferred until the issue of exhaustion is resolved. If merits discovery is allowed to begin before that resolution, the statutory goal of sparing federal courts the burden of prisoner litigation until and unless the prisoner has exhausted his administrative remedies will not be achieved." *Id.* at 741.

At the time of *Pavey*'s publication, discovery had been completed in this case. The

Defendants allege, pursuant to the Prison Litigation Reform Act ("PLRA"), that Plaintiff failed to exhaust his administrative remedies regarding claims one, three, five, and six. Thus, they argue that these claims should be dismissed because Plaintiff did not fulfill the PLRA's exhaustion requirement.

The PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*, 182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). The Illinois Administrative Code sets out the procedure for the filing of grievances by inmates. An inmate must first attempt to resolve the complaint informally. If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. Ill. Admin. Code § 504.810. The grievance officer is required to advise the Chief Administrative Officer at the facility in writing of the findings on the grievance. The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. Ill. Admin. Code § 504.830. An inmate may appeal the decision of the CAO in writing within 30 days. Ill. Admin. Code § 504.850. *See also Dole v.*

Defendants' Motions for Summary Judgment had been filed and fully briefed. Thus, it was already impossible to achieve one of the goals of *Pavey*–to prevent merits discovery before the issue of exhaustion of administrative remedies had been resolved. That is, the federal courts had not been spared the burden of litigation in *this* case. For these reasons, the undersigned will consider the question of exhaustion of administrative remedies on the evidence presented in the motion for summary judgment and response thereto.

*Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006).

The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. Under the Illinois Code, then, to fully exhaust administrative remedies, an inmate must file an appeal of a denied grievance to the ARB.

An inmate is required, however, to exhaust only those administrative remedies as are "available" to him. The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). Because remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006).

Defendants argue that Plaintiff did not properly exhaust his administrative remedies because he did not appeal any grievances regarding his claims against Blair, Caliper, Crespi, Folsom, Hilliard, Hoehner, Hosch, Null, Osman, and Wolfe prior to filing this lawsuit. Sherry Benton, Chairperson of the Administrative Review Board for the Illinois Department of Corrections conducted a search of ARB records and determined that Plaintiff did not appeal any grievances

concerning the alleged use of excessive force by Defendants Folsom and Hilliard in March 2003 (claim one), the denial of access to legal materials by Defendants Osman and Hosch in 2002 (claim three), the alleged retaliatory cell shakedown conducted by Defendants Crespi, Wolfe, Null, Hoehner, and Blair in April 2002 (claim five), or the denial of medical treatment by Defendant Caliper (claim six) (Doc. 57-2, Benton Affidavit, p. 5).

In response, Plaintiff points out that he did file a grievance regarding the action of Defendants Folsom and Hilliard on April 7, 2003 (Doc. 65, p. 3; Doc. 66, Exh. X). He filed a grievance of Defendant Caliper's denial of medical treatment on August 18, 2002 (Doc. 65, p. 3; Doc. 66-2, Exh. A). This grievance is stamped "received" by the "Office of Inmate Issues" four times, Nov. 22, 2002, February 4, 2003, April 24, 2003, and June 9, 2003.

The Court has reviewed all the grievances submitted with the complaint and with Document 66, entitled "Motion for Discovery," which was filed on the same day as the Response to the Motions for Summary Judgment (Doc. 65), and to which are attached a number of exhibits including copies of grievances.

### 1.    *Claim One*

The Court finds that Plaintiff filed a grievance regarding claim one against Defendants Folsom and Hilliard on April 7, 2003 (Doc. 66-3, p. 1). The counselor responded to this grievance on April 16, 2003. Defendants present evidence that no grievance appeal was filed on this issue; Plaintiff has pointed to no evidence that this grievance was appealed to the ARB. Thus, the Court finds that Plaintiff did not exhaust his administrative remedies on the issues raised in claim one. Accordingly, it is **RECOMMENDED** that summary judgment be granted in favor of Defendants Folsom and Hilliard on claim one.

### 2. Claim Three

On November 6, 2003, Plaintiff filed a grievance regarding the denial of access to courts due to the failure to provide him with the complaint Inmate Thomas had prepared, and regarding the denial of legal assistance on an appeal of a different civil rights case (Doc. 1-3, p. 6). The Grievance Counselor denied the grievance on November 18, 2003. Defendants present evidence that Plaintiff did not file an appeal of this grievance. Plaintiff does not point to, and the Court cannot find, any indication that Plaintiff appealed this grievance with the ARB. Thus, no genuine issue of material fact exists regarding whether Plaintiff appealed this grievance and thus exhausted his administrative remedies prior to filing suit. Thus, it is **RECOMMENDED** that summary judgment be granted in favor of Defendants Osman and Hosch on claim three.

### 3. Claim Five

On July 25, 2002, Plaintiff filed a grievance regarding the April 27, 2002, alleged retaliatory shakedown of his cell by Defendants Null, Blair, Crespi, Wolff, and Hoehner (Doc. 66-3, p. 12). The grievance was denied on August 8, 2002. Defendants have presented evidence that Plaintiff did not appeal this grievance to the ARB, as is required to fully exhaust administrative remedies. Plaintiff has not pointed to any evidence, nor can the Court find in the record any evidence, that Plaintiff did properly appeal. Thus, Plaintiff has failed to sustain his burden to demonstrate a genuine issue of material fact regarding whether he exhausted his administrative remedies on this issue, and Defendants are entitled to judgment as a matter of law. Thus, it is **RECOMMENDED** that summary judgment be granted in favor of Defendants Null, Blair, Crespi, Wolff, and Hoehner on claim five.

### 4.      *Claim Six*

On August 18, 2002, Plaintiff filed a grievance regarding his displeasure with the treatment he was receiving for his Hepatitis C (Doc. 1-3, pp. 8-9).  He reported that Defendant Caliper has repeatedly denied his requests for newly-developed treatments for the disease.  The grievance counselor denied this grievance on September 23, 2002.  A stamp on the grievance indicates that a "Grievance Officer" received the grievance on October 22, 2002.  Defendants present evidence that Plaintiff did not appeal this grievance to the ARB, and thus, that the grievance was not fully exhausted.  In response, Plaintiff points to the four "received" stamps on the grievance (dated November 22, 2002, February 3, 2004, April 24, 2003, and June 9, 2003) which he argues indicate the issue was appealed to the ARB.  The Court is perplexed as to why so many "received" stamps would appear on one grievance at so many different times.  Nevertheless, the Court is directed to construe all reasonable inferences in favor of the non-moving party. *Wheeler v. Lawson*, 539 F.3d 629, 633 (7th Cir. 2008). The Court finds it reasonable to infer that the stamps present a genuine issue of material fact regarding whether the August 18 grievance was submitted to the ARB and therefore whether Plaintiff fully exhausted his grievance on this question prior to filing suit. Accordingly, the undersigned **RECOMMENDS** that the summary judgment be denied as to Defendant Caliper on the question of exhaustion in claim six.

Finally, the Court notes that Plaintiff states generally that officials at Tamms prevent inmates from exhausting administrative remedies by stealing them, refusing to answer them, or holding them until they become untimely then returning them to the inmate (Doc. 65, p. 3).  Further, he states that the mail room staff steals letters sent to the ARB.  To the extent Plaintiff is attempting to argue that administrative remedies had become "unavailable" to him so that he was not required to file with

the ARB, these vague and conclusory assertions are insufficient to do so. *See Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) (conclusory statements insufficient to defeat motion for summary judgment). Plaintiff does not specify that he was prevented from appealing any of the above-noted grievances, all of which proceeded appropriately through the institutional grievance system. Furthermore, Plaintiff's own submission of nineteen letters from the ARB affirming the denial of various other grievances dated between January 2002 and May 2003 (Doc. 1) undermines his conclusory allegation that he has been prevented from appealing grievances with the ARB. These letters show that Plaintiff was able to successfully appeal grievances during the time period at issue. Thus, the Court finds that Plaintiff's vague and conclusory assertions that he was prevented from filing appeals with the ARB is insufficient to overcome summary judgment in favor of the above-noted Defendants.

In summary, the undersigned **RECOMMENDS** that summary judgment be **GRANTED** as to Defendants Folsom, Hilliard, Osman, Hosch, Null, Blair, Crespi, Wolff, and Hoehner because Plaintiff filed to properly exhaust grievances regarding the claims against them prior to filing suit. Thus, two issues remain for resolution on the merits: a claim against Defendant Caliper for deliberate indifference to a serious medical need (claim six), and a claim of unconstitutional use of excessive force against Defendants Wright, Stewart, and Neighbors (claim eight).[4]

### C. Deliberate Indifference to a Serious Medical Need

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v.*

---

[4]Defendants make no argument that Plaintiff did not exhaust his administrative remedies regarding claim eight.

*Gamble*, 429 U.S. 97, 104 (1976).  In order to prevail on such a claim, the Plaintiff must first show that his condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-653 (7th Cir. 2005) (citations and quotation marks omitted).  With respect to the objective component of that inquiry, "[a] 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Foelker v. Outagamie County,* 394 F.3d 510, 512-513 (7th Cir. 2005) (citation omitted).

Second, a prisoner must show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985).  Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987).  Put another way, the Plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653.  "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (citations omitted).

The Eighth Amendment does not entitle a prisoner to "demand specific care." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). A prisoner's "[m]ere dissatisfaction or disagreement with a doctor's course of treatment" does not raise a defendant's conduct to the level of deliberate indifference. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). *See also Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).

Plaintiff alleges that Defendant Caliper denied him adequate medical treatment for his Hepatitis C. Defendant Caliper avers that she is not a physician and she is not trained to diagnose medical conditions or to prescribe a course of treatment. Further, the evidence shows that Defendant Caliper recommended that Plaintiff's request for Pegasys be denied because it is an experimental treatment not yet approved by federal authorities and thus not part of the IDOC protocols. Plaintiff was treated for Hepatitis C according to the Federal Bureau of Prisons Clinical Practice Guidelines for the treatment of viral hepatitis.

Plaintiff has not raised a genuine issue of material fact that Defendant Caliper acted with deliberate indifference to his serious medical need. Plaintiff argues that he should have received a liver biopsy. Plaintiff is not entitled to demand specific care. *See Forbes*, 112 F.3d at 267. Further, and more importantly, Plaintiff has not shown that Defendant Caliper has acted with something more than recklessness in denying him medical care. The Court is not required to consider Plaintiff's fantastical claims that Defendant Caliper is a witch in league with Satan who controls medical staff. *See Payne*, 337 F.3d at 772. Plaintiff's claims that Defendant Caliper overrules the medical decisions of doctors is not based on personal knowledge, and therefore insufficient to overcome summary judgment. *Id.;* Fed. R. Civ. P. 56(e)(1). Finally, Defendant Caliper, by denying Plaintiff's grievances, is not personally liable for the underlying alleged constitutional violation because

liability for a constitutional violation does not attach to defendants who acted only to process administrative grievances. *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."). Without more, Plaintiff has not met his burden of demonstrating a genuine issue of material fact that Defendant Caliper acted with deliberate indifference to his serious medical needs. Accordingly, Defendant Caliper is entitled to judgment as a matter of law. Accordingly, it is **RECOMMENDED** that summary judgment be **GRANTED** in favor of Defendant Caliper on claim six for deliberate indifference to a serious medical need.

### D.     Unconstitutional Use of Excessive Force

Plaintiff alleged that on October 7, 2002, when Defendants Wright, Stewart, and Neighbors reattached his restraints, they were too tight. He further alleged that Defendant Neighbors punched him in the back of the neck while placing a spit hood over his head. Defendants present evidence that Dr. Chandra ordered Plaintiff placed in the restraints for his own protection because he had been cutting himself. The restraints were loosened on each limb every two hours to maintain proper circulation to Plaintiff's arms and legs. After one of these periods of loosening, Plaintiff complained that the restraints applied by Defendants Wright, Stewart, and Neighbors were too tight. The nurse checked them and agreed with the three officers that they were properly applied. Plaintiff testified that he did not sustain any injury on October 7, 2002, nor did he report any injuries on that date.

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir.2000). The inquiry that must be performed in analyzing such a claim is "whether the force

-20-

was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. Factors to be considered include: "the need for an application of force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner." *DeWalt*, 224 F.3d at 619-620. An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action. *Id.* at 9-10; *see also Outlaw*, 259 F.3d at 837-38. The "de minimis use of physical force" cannot lead to a constitutional violation. *DeWalt*, 224 F.3d at 619. *See also Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004) (stating that "the quantum of force required for a constitutional violation is that which is 'repugnant to the conscience of mankind'" (quoting *Hudson*, 503 U.S. at 10)). Thus, if the force is *de minimis*, the inquiry ends.

Defendants have presented evidence that the restraints were applied to maintain discipline in the prison and not maliciously or sadistically for the purpose of causing harm. The restraints were ordered by Defendant Chandra in an attempt to prevent Plaintiff from self-harm. The restraints were removed on each limb every two hours to maintain circulation in Plaintiff's arms and legs. Plaintiff's only complaint about the restraints was that after one period of loosening and refastening, he believed they were too tight. He complained to a nurse who checked them and determined they were applied properly. Plaintiff also alleged that Defendant Neighbors hit him in the neck. He testified in deposition, however, that he sustained no injuries from that incident, or from the use of the restraints.

Plaintiff did not respond to any of the facts demonstrated or arguments made by Defendants

on this claim.  Plaintiff has not shown any evidence, other than the unsubstantiated allegations in his complaint, that would convince a trier of fact to accept his version of events.  *See Steen*, 486 F.3d at 1022.  Thus, he has not sustained his burden to show a genuine issue for trial.  *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(2).  Accordingly, the undersigned **RECOMMENDS** that summary judgment be **GRANTED** in favor of Defendants Wright, Stewart and Neighbors on claim eight for unconstitutional use of excessive force.

### III. CONCLUSION

For the reasons set forth above, it is hereby **RECOMMENDED** that the Motion for Summary Judgment filed by Defendants Blair, Caliper, Crespi, Folsom, Hilliard, Hoehner, Hosch, Neighbors, Null, Osman, Stewart, Wolfe, and Wright (Doc. 57) be **GRANTED,** and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1, the parties shall have ten (10) days after the service of this Recommendation to file written objections thereto.  The failure to file a timely objection may result in the waiver of the right to challenge these Recommendations before either the District Court or the Court of Appeals.  *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED:  March 30, 2009**

s/ *Donald G. Wilkerson*
**DONALD G. WILKERSON**
**United States Magistrate Judge**