IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HENRY MOUNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| RAKESHA CHANDRA, CHERYL COUCH, KATHERINE CLOVER, JILL STEVENS, ROCKY PEPPERS, KRISTIN KWASNIEWSKI, TERRY CALIPER, MARVIN POWERS, TWYLA WATSON, TOMA OSMAN, JOANNA HOSCH, JACOB NULL, DERK WRIGHT, SCOTT STEWART, BRET NEIGHBORS, DAVID FOLSOM, PAUL HILLIARD, C/O BLAIR, JOHN WOLFF, BOBBY CRESPI, AND BRAD HOEHNER, | ) ) ) ) ) ) ) ) ) ) ) Case No. 3:04-cv-365 JPG |
| Defendants. | ) |

**REPORT AND RECOMMENDATIONS**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the Motion for Summary Judgment filed by Defendants Chandra, Stevens, Peppers, Powers, and Walton (Doc. 59). For the reasons set forth below, it is **RECOMMENDED** that the motion be **GRANTED** and that the Court adopt the following findings of fact and conclusions of law.

I. FINDINGS OF FACT

**A. Procedural History**

Plaintiff, a former inmate at Tamms Correctional Center ("Tamms"), filed his complaint in this action on May 28, 2004, alleging violations of his constitutional rights. The Court completed its threshold review of the action on December 8, 2006 (Doc. 11). The Court determined that

Plaintiff's complaint presented eleven claims. As relevant here, the Court determined that Plaintiff stated a claim against Defendant Powers for deliberate indifference to a serious medical need, ("claim six"); a claim against Defendants Chandra and Walton for unconstitutional use of excessive force in restraining him too tightly on October 6, 2002 ("claim eight"); and a claim against Defendants Chandra, Stevens, and Peppers for deliberate indifference to a risk of harm imposed by a cold cell between June 14 - 17, 2003 ("claim eleven").[1]

After discovery, all Defendants moved for summary judgment.[2] Defendants Chandra, Stevens, Peppers, Powers, and Walton filed the instant Motion for Summary Judgment, arguing that each is entitled to judgment in his or her favor (Doc. 59).

**B.      Claim Six**

Plaintiff alleges that Defendant Powers acted with deliberate indifference to his serious medical needs by denying him proper treatment for the Hepatitis C virus. Plaintiff alleges that he was diagnosed with Hepatitis C in 1998, and from that point forward he has been denied any type of treatment for the disease. Plaintiff alleges that Defendant Powers knows that if left untreated, Plaintiff will develop cirrhosis of the liver (Doc. 1, pp. 13-14).

Defendant Powers, a physician and Medical Director at Tamms since 1998, avers that he has

---

[1]The undersigned recognizes that the Seventh Circuit recently confirmed that separate, unrelated claims belong in different suits. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Given the age of this case (now going on five years), and the fact that the case was already three and one half years old at the time *George* was issued, the undersigned recommends that the Court's legitimate aim of judicial efficiency would be severely undermined by severing the unrelated claims in this case at this stage of the litigation.

[2]Two other motions for summary judgment are pending in the action: one by Defendants Couch, Clover, and Kwasniewski (Doc. 51); the other by Defendants Blair, Caliper, Crespi, Folsom, Hilliard, Hoehner, Hosch, Neighbors, Null, Osman, Stewart, Wolfe, and Wright (Doc. 57).

treated Plaintiff for Hepatitis C (Doc. 59-14, Powers Affidavit, ¶¶ 1-5). Defendant Powers has monitored Plaintiff's blood alanine aminotransferase ("ALT") levels every six months (Powers Affidavit, ¶¶ 6-7). ALT levels above 99 may indicate the virus is causing liver damage. A patient with ALT levels higher than 99 would be retested several times over the course of a year. If the levels remained elevated, other tests would be performed to determine whether drug therapy would be appropriate (Powers Affidavit, ¶¶ 8-9). On July 11, 2002, Plaintiff appeared for evaluation at the Hepatitis C clinic (Powers Affidavit, ¶ 10). He refused to have his vital signs taken and refused an abdominal examination (Powers Affidavit, ¶¶ 11-12). On January 3, 2003, Plaintiff's blood was drawn (Powers Affidavit, ¶¶ 15-16). On January 17, 2003, he was evaluated at the Hepatitis C clinic (Powers Affidavit, ¶¶ 17-18). His ALT levels were normal (Powers Affidavit, ¶ 19). A physical examination revealed no liver tenderness, no hepatomegaly, and no evidence of jaundice (Powers Affidavit, ¶ 20). Plaintiff requested a meeting with Defendant Powers a few days later to discuss the treatment of the disease (Powers Affidavit, ¶ 20). Defendant Powers met with him again on January 20, 2003, and discussed the diagnosis, monitoring, and treatment of Plaintiff's Hepatitis C (Powers Affidavit, ¶ 21). In a note regarding that meeting, Defendant Powers reported that Plaintiff "seems satisfied with monitoring and HCV clinics" (Powers Affidavit, ¶ 22). Defendant Powers avers that Plaintiff is seen regularly in Hepatitis C clinic and that his treatment of Plaintiff is "consistent with generally accepted guidelines for the treatment of Hepatitis C when the ALT is not elevated"(Powers Affidavit, ¶¶ 23-24). Plaintiff's liver enzymes are checked three times per year (Powers Affidavit, ¶ 26). His 2007 readings were within normal limits (Powers Affidavit, ¶¶ 27-30, 33, 34). Lab reports attached to the affidavit indicate that between November 2000 and April 2007, Plaintiff's liver enzymes were either normal or slightly elevated (Powers Affidavit, ¶ 39, Exh. 8-O).

When Plaintiff's enzyme levels were elevated, the next lab reading showed them to be normal or only slightly elevated (Powers Affidavit, ¶ 40). Defendant Powers avers that "no one has indicated or recommended that Mr. Mounson receive treatment for Hepatitis C given that he has no symptoms. We will continue to monitor his condition. This has been explained to him on more than one occasion" (Powers Affidavit, ¶ 38).

Plaintiff asserts in his response to the Motion for Summary Judgment that he is entitled to more treatment for his Hepatitis C than "only having my stomach touched or felt on by M.D. Powers every 6 months to a year and to have my blood drawn every 6 months." He argues that he is entitled to have a liver biopsy test to determine the extent of his Hepatitis C (Doc. 65, pp. 1-2).[3]

## C. Claim Eight

Plaintiff alleges that on October 6, 2002, he was "unnecessarily and unlawfully" placed in four point restraints by Defendant Chandra "when restraints were not even needed and only used as a tool to punish me for doing wrong."[4] Plaintiff remained in restraints on October 7, 2002. During this period of restraint, Plaintiff urinated on the floor. As a result, Defendant Powers catheterized him. Plaintiff alleges that Defendant Walton repeatedly pulled on his catheter causing him "excruciating" pain (Doc. 1, pp. 16-17).

Dr. Chandra, a psychiatrist at Tamms, avers that on October 6, 2002, he ordered that Plaintiff be placed on suicide watch in a strip cell because he was exhibiting self-harm behavior by reopening

---

[3]The Court notes that much of Plaintiff's response to the motions for summary judgment is directed toward the liability of Defendant Caliper. The only clear arguments regarding Defendant Powers are these two: inadequate treatment, and denial of a liver biopsy.

[4]In its threshold review of the complaint, the Court specified that this claim is limited to excessive force in the "overly tight restraints" placed on Plaintiff (Doc. 11, p. 13).

-4-

old self-inflicted wounds (Doc.59-8, Chandra Affidavit,¶¶ 1-6). Plaintiff was not allowed to have any property (Chandra Affidavit,¶ 7). Later that night, Plaintiff continued to tear at his wounds, and was agitated. Defendant Chandra ordered him placed in four-point restraints (Chandra Affidavit,¶ 9). Plaintiff was placed in restraints in order to protect him from self-harm (Chandra Affidavit,¶ 13). The restraints were to be released every two hours, by Defendant Chandra's order (Chandra Affidavit,¶ 11). Although Defendant Chandra was not present, the medical record indicates the orders were followed correctly (Chandra Affidavit,¶¶ 14-15). Defendant Chandra received no information that the restraints were too tight; the medical records do not indicate Plaintiff complained they were too tight (Chandra Affidavit,¶¶ 16-17). Defendant Chandra opines that the restraints were effective because Plaintiff did not harm himself while in restraints (Chandra Affidavit,¶ 18). Plaintiff testified in deposition that he was not harmed by Defendant Chandra placing him in four point restraints on October 6, 2002 (Doc. 59-2, Plaintiff Deposition Trans., p. 88).

Defendant Walton, a Licensed Practical Nurse at Tamms, avers that Dr. Powers ordered Plaintiff catheterized after he had intentionally urinated on himself (Doc. 59-3, Walton Affidavit, ¶¶ 1, 28). Defendant Walton was involved in the placement and monitoring of the catheter at the direction of Dr. Powers (Walton Affidavit, ¶¶ 29-30). She avers that she did not use any force in caring for Plaintiff on October 6 and 7, 2002, and that she did not touch the catheter for any reason other than to monitor urinary output (Walton Affidavit, ¶¶ 34-35). Further, Defendant Walton was not aware of, nor did she observe, any injuries Plaintiff sustained between October 6 and 7, 2002, and according to his medical records, Plaintiff himself made no complaints that Defendant Walton used force in checking the catheter (Walton Affidavit, ¶¶ 36,44). Defendant Walton is a nurse at

Tamms, and not a member of a security team (Walton Affidavit, ¶¶ 37-38). She avers that she would not use force against an inmate for security reasons, and that the only physical contact she has with inmates occurs in the course of providing medical care and not for effecting security (Walton Affidavit, ¶¶ 40-41). Plaintiff does not address this claim in his response to the motions for summary judgment.

**D.     Claim Eleven**

Plaintiff alleges that from June 14 to June 17, 2003, he was placed on suicide watch after he had been cutting himself. Plaintiff alleges that on June 14, no mental health staff evaluated him, and he was left alone in the cold cell, naked. On June 15, Defendant Stevens came to Plaintiff's cell. Plaintiff told her he was cold. She did not give him any property and left him naked in the cold cell. On June 16, Defendant Chandra evaluated Plaintiff and told him that if he wanted any property he would have to not cut himself for 24 hours. Despite this warning, Defendant Chandra provided Plaintiff with a smock at 9:40 a.m. On June 17, Plaintiff told Defendant Peppers that he would not hurt himself. He requested a blanket, a mattress, and his legal mail. Defendant Peppers gave him a mattress and a bar of soap, but nothing to keep him warm (Doc., 1, p. 20).

Defendant Chandra avers that on June 14, 2003, he ordered medical staff by phone to place Plaintiff on suicide watch in a strip cell because he had harmed himself by reopening an old wound (Doc. 59-8, Chandra Affidavit, ¶¶ 19-20). On June 15, 2003, a nurse reported that Plaintiff continued to cut himself and was writing on the walls of his cell with blood (Chandra Affidavit, ¶ 21). On June 16, 2003, Plaintiff asked to be removed from suicide watch, but based on his behavior, Defendant Chandra ordered that he remain on suicide watch (Chandra Affidavit, ¶ 22). Defendant Chandra saw Plaintiff on June 16. He made the following notes:

| | |
|---|---|
| S (subjective): | "I just can't understand why you won't tie me down." |
| O (objective): | Alert. OX3. Very gamey and manipulative. No acute distress noted. Inmate is not experiencing suicidal plans at this time. He was perplexed that while he cut on a suicide, he was not put in restraints. He would like to be restrained so that he can get "female" attention. No evidence of depression, dysthy, or psychosis. Limited insight and judgment. |
| A (assessment): | I. Exhibitionist. Sexual sadism. II. Antisocial personality disorder. |
| P (plan): | Continue on suicide watch–inmate is very manipulative. He <u>wants</u> to go into four point restraints as he "enjoys" the attention from female staff. He should be monitored closely but not put into restraints unless this writer is called. Continue on Prozac. Inmate may have safety smock. Follow-up with mental health professional daily. |

(Chandra Affidavit, ¶ 25; Exh. 5-E).

Plaintiff did not complain of cold to Defendant Chandra, he did not ask for a blanket. Plaintiff was issued a smock. The room did not appear cold to Defendant Chandra (Chandra Affidavit, ¶¶ 23, 26). There was no thermometer in Plaintiff's cell (Chandra Affidavit, ¶ 28). No Tamms employee informed Defendant Chandra that Plaintiff appeared to be cold, that his cell was cold, or that Plaintiff exhibited signs or symptoms of hypothermia (Chandra Affidavit, ¶ 30).

Defendant Stevens, a licensed Clinical Professional Counselor at Tamms, avers that she performed a mental health evaluation of Plaintiff on June 15, 2003, at 9:17 a.m. while he was on suicide watch (Doc. 59-10, Stevens Affidavit, ¶¶ 1-2, 7-9). Her note reflects that Plaintiff asked for hygiene products (Stevens Affidavit, ¶ 9). He did not inform Defendant Stevens that he was cold, or that he wanted a blanket (Stevens Affidavit, ¶ 10). Defendant Stevens saw him again at 9:24 a.m. because Plaintiff had cut himself and was writing on the wall with blood (Stevens Affidavit, ¶¶ 12-13). Plaintiff made no complaints to Defendant Stevens that he was cold (Stevens Affidavit, ¶ 19).

Defendant Stevens did not see Plaintiff again until June 22, 2003 (Stevens Affidavit, ¶ 20).

Defendant Peppers, a licensed social worker at Tamms, avers that he saw Plaintiff on June 17, 2003, at 10:30 a.m. for a mental health evaluation (Doc. 59-12, Peppers Affidavit, ¶¶ 1-2, 6-7). At that time, Plaintiff did not show any signs of acute distress, and denied any intent to harm himself. Defendant Peppers determined that Plaintiff could "step down" to close supervision (Peppers Affidavit, ¶ 7). Defendant Peppers recorded his property as a foam mattress, safety smock, soap, washcloth, safety toothbrush, and toothpaste (Peppers Affidavit, ¶ 7). Plaintiff did not complain of being cold, and did not ask Defendant Peppers for a blanket (Peppers Affidavit, ¶¶ 8-9). Defendant Peppers avers that Plaintiff did not appear to be cold, did not exhibit signs or symptoms of suffering from cold temperatures, and made no complaints of being cold (Peppers Affidavit, ¶ 14).

## II. CONCLUSIONS OF LAW

### A.   Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The burden is upon the moving party to establish that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A fact is material if it is outcome determinative under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ballance v. City*

*of Springfield, Illinois Police Department*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004). *See also Anderer v. Jones*, 385 F.3d 1043, 1064 (7th Cir. 2004).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986); *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 637 (7th Cir. 2001); *Sybron Transition Corporation v. Security Insurance Company of Hartford*, 107 F.3d 1250, 1255 (7th Cir. 1997).

A showing of a mere factual disagreement between the parties is insufficient; the factual issue must be "material," meaning that the issue must be one affecting the outcome of the suit. *See Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial." *Id.*

The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir.2005) (other citations omitted)). The moving party bears the initial burden of producing evidence that identifies "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes to demonstrate the absence of a genuine issue of material fact." *Outlaw*, 259 F.3d at 837 (quoting *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996)). After the moving party has satisfied its burden to establish that no genuine issue of material fact exists, the burden shifts to the non-moving party to "set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "may not rely merely on allegations or denials in its own pleading." *Id.* The opposing party must, instead, "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.

**B.     Deliberate Indifference to a Serious Medical Need**

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, the Plaintiff must first show that his condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-653 (7th Cir. 2005) (citations and quotation marks omitted). With respect to the objective component of that inquiry,

"[a] 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Foelker v. Outagamie County,* 394 F.3d 510, 512-513 (7th Cir. 2005) (citation omitted).

Second, a prisoner must show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987). Put another way, the Plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (citations omitted).

The Eighth Amendment does not entitle a prisoner to "demand specific care." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). A prisoner's "[m]ere dissatisfaction or disagreement with a doctor's course of treatment" does not raise a defendant's conduct to the level of deliberate indifference. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). *See also Snipes v. DeTella*,

95 F.3d 586, 591 (7th Cir. 1996).

Plaintiff alleges that Defendant Powers acted with deliberate indifference to his serious medical need for treatment of Hepatitis C. In response, Defendant Powers provides evidence that Plaintiff refused to participate in the Hepatitis C clinic on one occasion, that his ALT levels were within normal range or just slightly elevated between 2000 and 2007, that he was regularly evaluated for symptoms, and he did not complain of additional symptoms regarding his Hepatitis C that would warrant additional treatment or drug therapy. In the face of this evidence, Plaintiff makes the unsupported assertions that he has not been given adequate treatment for the disease, and that he is entitled to a liver biopsy to determine the extent of his disease.

Defendant Powers is entitled to judgment as a matter of law on this claim because Plaintiff has failed to make a sufficient showing on an essential element of his case. He has not come forward with any evidence that Defendant Powers acted with a sufficiently culpable state of mind to constitute deliberate indifference. Defendant Powers demonstrates that Plaintiff has been monitored for elevated blood levels that would indicate damage to his liver, and has been examined regularly for other symptoms that would indicate Plaintiff is in need of additional therapies for the disease. Although Plaintiff believes that he needs a liver biopsy test, Defendant Powers presents evidence that other testing is not medically indicated. Plaintiff's belief that he needs the test is not sufficient to demonstrate deliberate indifference because Plaintiff is not entitled to demand specific care. *See Forbes,* 112 F.3d at 267. Plaintiff's disagreement with Defendant Powers's treatment of his disease is also insufficient to demonstrate deliberate indifference. *See Johnson*, 433 F.3d at 1013. In short, Plaintiff has not demonstrated that Defendant Powers acted with deliberate indifference to his serious medical need. Thus, Defendant Powers is entitled to judgment as a matter of law.

Accordingly, it is **RECOMMENDED** that summary judgment be **GRANTED** in favor of Defendant Powers on claim six for deliberate indifference to a serious medical need.

**C.     Unconstitutional Use of Excessive Force**

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir.2000). The inquiry that must be performed in analyzing such a claim is "whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. Factors to be considered include: "the need for an application of force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner." *DeWalt*, 224 F.3d at 619-620. An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action. *Id.* at 9-10; *see also Outlaw*, 259 F.3d at 837-38. The "*de minimis* use of physical force" cannot lead to a constitutional violation. *DeWalt*, 224 F.3d at 619. *See also Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004) (stating that "the quantum of force required for a constitutional violation is that which is 'repugnant to the conscience of mankind'" (quoting *Hudson*, 503 U.S. at 10)). Thus, if the force is *de minimis*, the inquiry ends.

**1.     Defendant Chandra**

Plaintiff alleges that Defendant Chandra unlawfully ordered him placed in four-point restraints to "punish" Plaintiff for "doing wrong." In support of the motion for summary judgment

Defendant Chandra produces evidence that on October 6, 2002, Plaintiff was cutting himself. Defendant Chandra placed him on suicide watch and removed property from his cell. Plaintiff continued to harm himself, thus, Defendant Chandra ordered him restrained to protect him from further self-harm. Defendant Chandra ordered the restraints be released every two hours to ensure proper circulation in Plaintiff's limbs. The medical records indicate that this direction was followed properly by staff at Tamms. Defendant Chandra had no knowledge that the restraints were placed too tightly, as there was no indication in the medical records that Plaintiff made any complaints that the restraints were too tight, and no staff member told him that Plaintiff made any such complaints. Plaintiff did not complain to Defendant Chandra that the restraints were too tight. Finally, Plaintiff stated in deposition that he suffered no harm as a result of being restrained on October 6 and 7.

Plaintiff has not demonstrated with evidence other than his unsupported allegation that Defendant Chandra acted maliciously or sadistically to cause harm by placing in restraints on October 6, 2002, after he had been cutting himself. Defendant Chandra presents evidence that Plaintiff was first placed on suicide watch, then after he continued to harm himself, was placed in restraints. Defendant Chandra was not involved in placing the restraints on Plaintiff, and he had no knowledge that they were placed too tightly. That the restraints, which were loosened every two hours, were too tight, cannot be considered anything more than a *de minimis* use of force because Plaintiff suffered no harm as a result. As to their placement at all, Defendant Chandra characterizes this conduct as a purely medical decision. Plaintiff has provided no evidence that Defendant Chandra acted maliciously or sadistically to cause harm, thus he has not met his burden of demonstrating the existence of a genuine issue of material fact on this question. Accordingly, the undersigned **RECOMMENDS** that summary judgment be **GRANTED** in favor of Defendant

Chandra on claim eight for unconstitutional use of excessive force.

### 2. Defendant Walton

Likewise, Plaintiff has not provided sufficient evidence, other than the unsupported allegations in his complaint, to demonstrate that Defendant Walton acted maliciously or sadistically to cause him harm. Defendant Walton avers that her only contact with Plaintiff was in the context of providing him nursing care. She further avers that the only contact she had with his catheter was to monitor urinary output. She avers that she did not use force in providing Plaintiff with medical care during that time period and that she does not participate in effecting security within the prison. There is no indication in the medical records from October 6 and 7, 2002, that Plaintiff complained about an excessive use of force by Defendant Walton. Plaintiff does not specifically respond to this claim in his response to the motions for summary judgment. Plaintiff may not rely upon allegations in his own pleading to overcome a motion for summary judgment. As such, Plaintiff has not demonstrated a genuine issue of material fact that Defendant Walton used force against him or that any action she took to provide him with medical care was done maliciously or sadistically to cause harm. Thus, she is entitled to judgment as a matter of law. Accordingly, it is **RECOMMENDED** that summary judgment be **GRANTED** in favor of Defendant Walton on claim eight for unconstitutional use of excessive force.

### D. Cold Conditions of Confinement

To prevail on an Eighth Amendment conditions-of-confinement claim, a plaintiff must demonstrate that the harm imposed to him because of his cell conditions was "sufficiently serious" so as to deprive him of "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prisoner does not have a right to confinement in comfort, *Murphy v.*

*Walker*, 51 F.3d 714, 721 (7th Cir. 1995), but prisoners are entitled to adequate shelter, which includes protection from "extreme cold," *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997). In evaluating a claim of extreme cold, the court is to assess various factors, including whether the prisoner had alternative means of warmth, the adequacy of those alternatives, the length of exposure to cold, and whether he was forced to endure other harsh conditions in addition to the cold. *Id.* at 644. The Seventh Circuit holdings are limited to instances of extremely cold temperatures or of extended exposure to cold. *See DelRaine v. Williford*, 32 F.3d 1024, 1031 (7th Cir. 1994) (broken cell windows; wind chills between negative 40 and negative 50 degrees); *Henderson v. DeRobertis*, 940 F.2d 1055, 1056 (7th Cir. 1991) (malfunctioning heating system when temperature was 22 degrees below zero); *Murphy*, 51 F.3d at 720-21 (unheated cell and no blankets or clothing for a week and a half).

If a plaintiff establishes sufficiently cold conditions to meet the objective standard, he must then show that prison officials acted with deliberate indifference to the risk of harm imposed by the cold conditions. *DelRaine*, 32 F.3d at 1036; *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). This means that "the official knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it," *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). Deliberate indifference cannot be established by a showing of negligence or a claim that an official "should have known" of the risk. *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir.2004). An inmate must establish that "the official received information from which the inference could be drawn that a substantial risk existed, and that the official actually drew the inference." *Townsend*, 522 F.3d at 773.

Plaintiff alleges that the cell in which has was held on suicide watch, naked, was so cold that

it constituted an unconstitutional condition of confinement. Defendants Chandra, Stevens, and Peppers argue in response that Plaintiff did not complain to any of them that his cell was too cold. They argue he exhibited no behaviors that would have demonstrated that he was too cold in the cell. He did not ask for a blanket or other clothing. The medical records do not reflect that he complained of being too cold to any other member of the medical staff. Plaintiff does not specifically respond to this claim.

Plaintiff has failed to demonstrate that Defendants Chandra, Stevens, or Peppers acted with a reckless disregard for the cold conditions of the cell. In fact, he has failed to demonstrate, other than with his own unsupported allegations, that any of these Defendants had any knowledge that the cell was cold. Thus, he has failed to establish an essential element of his claim, that is that the Defendants acted with deliberate indifference to any risk of harm he faced by being housed in a cold cell. Accordingly, it is **RECOMMENDED** that summary judgment be **GRANTED** in favor of Defendants Chandra, Stevens, and Peppers on claim eleven for deliberate indifference to a serious risk of harm imposed by Plaintiff's conditions of confinement.

### III. CONCLUSION

For the reasons set forth above, it is hereby **RECOMMENDED** that the Motion for Summary Judgment filed by Defendants Chandra, Stevens, Peppers, Powers, and Walton (Doc. 59) be **GRANTED,** and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1, the parties shall have ten (10) days after the service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge these Recommendations before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004);

*United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: March 30, 2009**

                 **s/** *Donald G. Wilkerson*
                 **DONALD G. WILKERSON**
                 **United States Magistrate Judge**